[Sac. No. 5022. In Bank.—July 30, 1936.]

W. A. LEE et al., Respondents, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

Thos. J. Straub, W. R. Dunn, T. L. Chamberlain and W. H. Spaulding for Appellant.

Charles L. Gilmore for Respondents.

THOMPSON (R. L.), J., *pro tem.*—The defendant has appealed from a decree which was rendered against it quieting title in the plaintiffs to ten miner's inches of water to be taken from a reservoir constructed on land conveyed by the plaintiffs' predecessor in title to the defendant's predecessor in title by a deed reserving to "said grantor and his assigns" perpetual use of ten miner's inches of water therefrom "free of charge". The decree also authorizes the plaintiffs at their own expense to reconstruct or repair the reservoir, removing all silt and debris therefrom so as to enable them to secure therefrom the allotted quantity of water.

The complaint alleges that the plaintiffs became the owners of and entitled to ten miner's inches of water to be taken from the reservoir which was constructed on the premises of the defendant, as grantee by mesne conveyance from Allen Towle, the former owner of a tract of land in Placer County, a portion of which land he conveyed to South Yuba Canal Company, the predecessor in interest thereto of the defendant; that this deed expressly reserves to the grantor and his successors in interest said quantity of water which is supplied to the reservoir from springs thereon. In effect the complaint also alleges that the plaintiffs acquired title by adverse possession to said ten miner's inches of water to be taken from the reservoir.

It appears without conflict that Allen Towle owned 240 acres of farm land in Placer County, and that he sold and conveyed 6.42 acres thereof to the South Yuba Canal Company September 7, 1876, which last-mentioned tract contained springs furnishing him with water to an amount of ten miner's inches, which, for some time past, he had used for domestic purposes and to irrigate the remaining portions of his ranch. That deed contained the following clause with respect to the reservation of water from the springs:

"I, Allen Towle, . . . do by these presents grant unto the South Yuba Canal Company, . . . all and singular that

certain tract of land situated in Placer County, . . . containing about six, 42/100 acres. Also a perpetual right of way for a ditch running over and across adjoining land owned by said grantor from the proposed reservoir now in course of construction by said grantee, . . . to have and to hold . . . forever.

"Whereas the above tract of land is being purchased by the above named grantee for the sole purpose and use of erecting and maintaining a reservoir thereon for the confinement and accumulation of water, and whereas there is now flowing from natural springs thereon an average of ten inches of water used for agricultural purposes upon the land of said grantor adjoining the land hereby conveyed,

"Now therefore the said grantee by its acceptance of this grant covenants and agrees to and with the said grantor and as a part consideration of said grant of the above described land and right of way, that the said grantor and his assigns shall and may at all times hereafter have use and enjoy unmolested and free of charge the amount of ten inches of water, miner's measurement, to be drawn from any reservoir which the said grantee or its agents may erect or cause to be erected upon the above described land hereby conveyed."

The reservoir and ditch were subsequently completed and for many years thereafter were maintained and used by the original grantee of the 6.42 acre tract of land for storing and marketing water. Some twenty years ago this 6.42 acre tract, together with the reservoir and ditch thereon, were conveyed to the Pacific Gas and Electric Company, which continued to maintain and operate the same for storing and marketing water until July 18, 1932. During all of that time from September, 1876, to the time of the abandonment of the reservoir in 1932, the owners thereof continued to supply the plaintiffs and their predecessor in title, pursuant to the terms of the covenant in the original deed, with ten miner's inches of water from the reservoir which were used for necessary irrigation of their adjoining land. These springs at all times contributed to the reservoir at least ten miner's inches of water. The spring water was mingled with and became an inseparable part of water which was otherwise supplied to the reservoir. The answer concedes that the plaintiffs appropriated ten miner's inches of water from the

reservoir during that time. This water was furnished plaintiffs pursuant to the covenant in the deed. The answer alleges in that regard, "Defendant admits that plaintiffs and their predecessors have taken and enjoyed unmolested and free use of waters from the alleged reservoir."

The answer alleges and the defendant contends that it was relieved of the burden of furnishing plaintiffs the ten miner's inches of water under the covenant in the deed because it was compelled to abandon the reservoir in 1932 when the department of public works of the state of California required it to construct a spillway in connection therewith for the benefit of the public highway at great expense.

The court found that the plaintiffs were entitled to ten miner's inches of water from the springs and reservoir as provided by the covenant in the deed of conveyance from Allen Towle to the South Yuba Canal Company in September, 1876, to be used for agricultural purposes on their adjoining lands; that they and their predecessor in title had continuously taken and used that amount of water therefrom to irrigate their adjoining farms from 1876 to July, 1932, when the reservoir and ditch were abandoned by the defendant; that they acquired the title to said water as a *personal right* vested in the grantor, Allen Towle, and his successors in interest, and not as a covenant running with or appurtenant to their land; that the defendant negligently permitted the reservoir to be filled with silt and debris so as to stop the flow of water therein from the springs at the bottom thereof and that the plaintiffs are entitled to repair, rehabilitate and remove the silt and debris from the reservoir, at their own expense, so as to secure the allotted amount of water to which they are entitled. A decree was rendered accordingly in favor of the plaintiffs. From this decree the defendant has appealed.

The record contains ample evidence to support the findings that the plaintiffs are entitled by adverse possession to ten miner's inches of water to be taken from the springs and reservoir of defendant and used for agricultural purposes on their lands adjacent to the property upon which the reservoir was constructed. Paragraph IX of the complaint sufficiently alleges title to the water by adverse possession. The allegations of that paragraph were specifically admitted by the answer. The covenant in the deed from

Allen Towle to the South Yuba Canal Company in 1876, as a part consideration for the conveyance of the 6.42 acre tract of land upon which the springs exist specifically reserves to the grantor and his successors in interest ten miner's inches of water to be "used for agricultural purposes upon the land of said grantor adjoining the land hereby conveyed". The answer admits that "plaintiffs and their predecessors have taken and enjoyed unmolested and free use of waters from the alleged reservoir". The plaintiff W. A. Lee testified that they had "drawn from this particular reservoir and used upon the land adjoining" said water "ever since the reservoir was constructed, . . . probably 57 or 8 years ago". He added that he had personally taken and used the water in that manner for twenty years prior to the abandonment of the reservoir. In the absence of a conflict of evidence in that regard, we are of the opinion this constitutes adequate evidence of title to the water by adverse possession. (*Northern California Power Co.* v. *Flood,* 186 Cal. 301 [199 Pac. 315].) In the case last cited it was held that one who continuously used a quantity of water from an irrigation ditch with the knowledge of the owner of the ditch under a claim of right for a period in excess of five years for the benefit of certain agricultural land, thereby acquired title to such amount of water by adverse possession. It is said in that regard:

"The evidence tended to show that the water right of the defendant was acquired originally by one King from Asbury, the original appropriator, by a verbal agreement for the sale of thirty inches of the water flowing in the ditch, and that thereafter King and his successors in ownership of the Flood tract, *claiming under said purchase,* used upon the land such part of the waters flowing in the ditch as they deemed necessary from time to time *and that this use was made with the knowledge* of Asbury and his successors.

"Such a use by King and his successors claiming under the verbal agreement would be adverse to Asbury and to others holding under him, and if continued uninterruptedly for five years it would create a prescriptive title to the quantity actually used, even if the sale of water by parol agreement were invalid. The evidence in this case indicates that a prescriptive title had been acquired in that manner."

Applying the principle of that case to the facts of the

present action, it appears that Allen Towle and his successors in interest took and used from the springs and reservoir for beneficial purposes upon their land adjoining the tract which was conveyed to the defendant, for some fifty-eight years continuously, ten miner's inches of water, with the knowledge of the defendant and his predecessor in title, pursuant to the specific covenant of the deed therefor. This constitutes title to that amount of water by prescription.

 It is true that to establish adverse possession to water it is necessary that: (1) The possession must be actual occupation, open and notorious, not clandestine. (2) It must be hostile to the defendant's title. (3) It must be held under a claim of title exclusive of any other right, as one's own. (4) It must be continuous and uninterrupted for a period of five years prior to the commencement of the action, not, however, necessarily next before the commencement of the action. (2 Kinney on Irrigation and Water Rights, 2d ed., p. 1876.) But the facts of the present case fully meet all these requirements. We therefore conclude that the plaintiffs have adequately proved title to the water in question by adverse possession, and the judgment is sufficiently supported in that regard.

 It is therefore immaterial whether the covenant in the deed reserves to the grantor and his successors in interest an easement running with and appurtenant to his land, or whether it constitutes an easement in gross or a mere personal right of the original grantor and his successors in interest to the water in question. It nevertheless remains true that under that covenant, with a claim of title thereto, the original grantor and the plaintiffs, who are his successors in interest, continuously used for agricultural purposes on their adjoining land ten miner's inches of water. The evidence shows that the plaintiffs acquired title by adverse possession in the same manner that their predecessor did. It does not defeat their title to the water merely because the original deeds to them fail to specifically mention the water rights. Title by adverse possession was established by the plaintiffs pursuant to the same covenant in the original deed, independently of a similar title to the same amount of water for the same purpose which was previously established by the common grantor of all parties.

It is also immaterial that the court failed to adopt findings with respect to the alleged defense to the effect that the reservoir was necessarily abandoned by the defendant when the department of public works of the state of California required it to construct a spillway in connection therewith at great expense. If the plaintiffs acquired title by adverse possession to ten miner's inches of water flowing from the springs which supplied the reservoir, they are entitled to the use and benefit of that water whether the defendant voluntarily or necessarily abandoned the use of the reservoir.

The defendant may not complain, since it has abandoned the reservoir and permitted it to accumulate silt and debris so as to prevent the flow of water into it from the springs, that plaintiffs are permitted to remove this accumulation of earth and refuse to repair the reservoir, at their own expense, so as to secure the water to which they are entitled. This is not a suit for damages. In effect, it is a mere suit to quiet title to ten miner's inches of water.

The judgment is affirmed.

Waste, C. J., Shenk, J., Seawell, J., Curtis, J., and Pullen, J., *pro tem.*, concurred.

Rehearing denied.